*In re* GEORGE ROMAN, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* GEORGE ROMAN, Respondent-Appellant.)

First District (4th Division)    No. 78-77

Opinion filed September 7, 1978.

James J. Doherty, Public Defender, of Chicago (Geraldine V. Biggs and Frances G. Sowa, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ann Callum, and Stephen D. Ferrone, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The minor-respondent, George Roman, appeals from a judgment of the circuit court of Cook County, Juvenile Division, committing him to the Department of Corrections after he was found delinquent for committing the offense of theft. (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(a)(1).) Respondent argues (1) that the court abused its discretion in committing him to the Department of Corrections since the trial court's finding that he was beyond the control of his parents was against the manifest weight of the evidence and contrary to the testimony and the recommended placement of the probation officer, and (2) that the trial court's reference to the seriousness of the respondent's misconduct impermissibly applied an adult standard to this juvenile.

We affirm.

Respondent does not question the procedure followed when he entered an admission to the charge of theft on March 11, 1977, and our examination of the record shows that the court properly and in great detail admonished respondent concerning his rights and the consequences of his admission. The record demonstrates the admission was voluntarily and intelligently entered. (*In re Beasley* (1977), 66 Ill. 2d 385, 362 N.E.2d 1024, *cert. denied* (1978), 434 U.S. 1016, 54 L. Ed. 2d 761, 98 S. Ct. 734.) In particular, the court was careful to point out that it was not a party to the pretrial conference, that it was not bound by any agreement reached by the attorneys and that it might or might not accept any disposition

recommended by the attorneys. Respondent indicated that he understood.

As a factual basis for the admission, it was stipulated that the victim would testify that on October 15, 1976, respondent tried to sell him a bracelet, which he recognized by two initials on it as belonging to him. The victim went to his apartment where he had last seen his bracelet and found the rear porch window was broken.

After the court accepted the admission, found respondent delinquent and adjudged him a ward of the court, a dispositional hearing was held. The court considered a written social investigation report compiled by Probation Officer Rohan, who testified that respondent had four previous referrals to the juvenile court: a petition alleging burglary which was dismissed without prejudice in August of 1974; a second petition alleged burglary and resulted in a period of six months' supervision that was terminated satisfactorily on December 2, 1975; a third petition alleged theft and two counts of burglary but it was dismissed without prejudice on December 1, 1975; and a fourth petition charged criminal trespass to vehicle and theft, but it too was dismissed with leave to reinstate on March 11, 1977, following respondent's admission to the instant petition. Probation Officer Rohan's testimony established the history of 11 station adjustments during the preceding 4 years which were mainly directed toward property-related offenses such as theft and criminal trespass to property.

The probation officer also described respondent's home environment. He stated that the respondent's parents had difficulties between themselves. An older brother was currently in the county jail awaiting trial. Respondent, himself, stated to the witness that he was following the example of this older brother. Officer Rohan informed the court that respondent was in regular attendance in the eighth grade and his behavior had been "pretty good" the last six months. He was transferred to a special class for children causing troubles and related very well to a particular teacher and had not caused many recent problems in school. The probation officer commented on respondent's relationship with his parents and said that respondent got along well with other members of his family, although his "street behavior" was disruptive. The probation officer recommended that respondent be placed on probation despite his long record, stating he had referred him to a group counseling program directed by probation officers and respondent had agreed to participate. He had also referred respondent to another program and both programs together would bring the probation officer into contact with respondent twice a week. In addition, the family had agreed to engage in family therapy and a therapist at the court had indicated an interest in working with the family.

The assistant public defender representing respondent argued in behalf of the probation officer's recommendation. The assistant State's Attorney argued that the respondent should be committed to the Department of Corrections in light of his past history of contacts with the police and the juvenile court.

At the conclusion of the hearing, the trial court stated:

> "[B]ased upon the totality of the evidence and information submitted and after duly considering the positions and recommendations of the parties, I find a disposition of probation in the case at bar to be inappropriate, I find it would deprecate the seriousness of the minor respondent's misconduct, and would be inconsistent with the ends of justice. I also find the minor respondent, George Roman, to be beyond the control and discipline of his parents and guardians and in his best interest and the best interest of the community at large, that he be committed to the Department of Corrections, Juvenile Division, * * *."

■■ Respondent first urges that the trial court's finding that he was beyond the control of his parents was against the manifest weight of the evidence. Primarily, respondent contends the court's finding that he was beyond the control of his parents was not substantiated by the evidence. This argument is based on the testimony of the probation officer that respondent behaved at home, respected his parents and maintained a good relationship with his brothers and sisters; that the family had agreed to engage in therapy; and that his school behavior for several months had been "exemplary." Although there was testimony that respondent's behavior in school had improved since his relationship with a particular teacher, there was no testimony that it had been "exemplary." Although the family had agreed to engage in therapy, such therapy had not been arranged or initiated at the time of the hearing. The frequency and the seriousness of respondent's behavior outside the home was sufficient to establish that he was beyond the control of his parents. The probation officer implied as much when he pointed out that he "believed" that respondent did behave well at home, a proposition he apparently realized was surprising in light of respondent's "street behavior" which the probation officer described as having been "quite disruptive." The trial court's finding that respondent was beyond the control and discipline of his parents was not against the manifest weight of the evidence. *In re Seibert* (1975), 29 Ill. App. 3d 129, 132, 329 N.E.2d 799; *In re Stead* (1978), 59 Ill. App. 3d 1012, 376 N.E.2d 689.

■■ Respondent also contends the court's finding that commitment was in the best interest of the respondent and of society was contrary to the manifest weight of the evidence, that the court seemingly ignored the vast probationary facilities available, abruptly removing respondent from the

community, in spite of the respondent's "good behavior" during the prior eight months when, it is claimed, any alleged "chain of habitually wrongful conduct" was broken. However, respondent's record dated from 1972. In view of this well-established pattern of behavior, it cannot be said that the trial court's finding that commitment was in his best interest and that of the community was against the manifest weight of the evidence or that respondent's behavior had in fact changed. Compare *In re Thomas* (1978), 56 Ill. App. 3d 587, 594, 372 N.E.2d 134.

■■ Respondent claims that the trial court incorrectly used an adult standard when it remarked that probation was inappropriate because it would deprecate the seriousness of respondent's conduct and would not be consistent with the ends of justice. This language appears in section 5—6—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—1), and refers to a standard employed for determining whether probation or conditional discharge is appropriate for an adult criminal offender. But the record also shows that the trial court considered and enunciated the appropriate juvenile standards in arriving at its disposition (Ill. Rev. Stat. 1977, ch. 37, par. 705—10(1)), thereby alleviating any possible prejudice. (See *In re Antosz* (1978), 63 Ill. App. 3d 829, 380 N.E.2d 847.) And as this court noted in *In re Wilson* (1976), 40 Ill. App. 3d 619, 622, 352 N.E.2d 251, and *In re Stead*, the choice of a dispositional order rests within the sound discretion of the trial court and absent a showing of abuse the trial court's determination should not be reversed on review. The court in *Wilson* also pointed out that dispositional hearings for minors are not comparable to sentencing hearings for adults and that "station adjustments," even though some might be remote in time, could be considered at the dispositional hearing because they are relevant to the question of the best interest of the minor and the public. (40 Ill. App. 3d 619, 621-22.) Therefore, in addition to the charge of theft to which the minor admitted in this proceeding, the court could also consider the other evidence of respondent's conduct introduced at the hearing. Compare *In re Miller* (1977), 49 Ill. App. 3d 772, 774-75, 364 N.E.2d 973.

In our opinion, no abuse of discretion has been shown in view of this and the other evidence received and considered by the trial court at the dispositional hearing. Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

JOHNSON, P. J., and LINN, J., concur.